# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 05/19/2020 03:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
20STCV19054

| | **SUM-100** |
|---|---|
| **SUMMONS** | |
| *(CITACION JUDICIAL)* | **FOR COURT USE ONLY** *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:** <u>AMERICAN BUREAU OF SHIPPING a/k/a</u>
*(AVISO AL DEMANDADO):* <u>ABS, a corporation, and DOES 1</u>
through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** MITCHELL ALAN ANTUNOVICH,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court 111 North Hill Street Los Angeles, CA 90022 | CASE NUMBER: *(Número del Caso):* 20STCV19054 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BISNAR|CHASE LLP
1301 Dove Street, Suite 120, Newport Beach, CA 902600
Tel: (949) 752-2999 | Fax: (949) 752-2777

Sherri R. Carter Executive Officer / Clerk of Court

| DATE: 05/19/2020 | Clerk, by | R. Clifton | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* American Bureau of Shipping a/k/a ABS, a corporation

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 5/27/2020

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Electronically FILED by Superior Court of California, County of Los Angeles on 05/19/2020 03:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
20STCV19054

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Stuart Rice

1    **BISNAR | CHASE LLP**
2    BRIAN D. CHASE, CA SBN 164109
     TOM G. ANTUNOVICH, CA SBN 305216
3    1301 Dove Street, Suite 120
     Newport Beach, Ca 92660
4    Tel: (949) 752-2999
     Fax: (949) 752-2777
5
6    Attorneys for Plaintiff
7
8
9           **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                **FOR THE COUNTY OF LOS ANGELES**
11
12    MITCHELL ALAN ANTUNOVICH, an      CASE NO.: 20STCV19054
     individual,
13                                JUDGE:
14          Plaintiff,
15                             **CIVIL COMPLAINT FOR**
                                 **COMPENSATORY AND PUNITIVE**
16    v.                            **DAMAGES; DEMAND FOR JURY TRIAL**
17    AMERICAN BUREAU OF SHIPPING a/k/a ABS,    1. WRONGFUL DISCHARGE IN
     a corporation, and DOES 1 through 100, inclusive,       VIOLATION OF PUBLIC POLICY
18                                       (CACI 2430)
19          Defendants.              2. DISABILITY DISCRIMINATION—
                                    DISPARATE TREATMENT
20                                       (GOVT. CODE, § 12940(A)) (CACI 2540)
21                           3. DISABILITY DISCRIMINATION—
                                    REASONABLE ACCOMMODATION
22                                       (GOVT. CODE, § 12940(M)) (CACI 2541)
23                           4. DISABILITY DISCRIMINATION—
                                    REASONABLE ACCOMMODATION—
24                                       FAILURE TO ENGAGE IN
                                    INTERACTIVE PROCESS
25                                       (GOVT. CODE, § 12940(N)) (CACI 2546)
26                           5. DISPARATE TREATMENT—AGE
                                    DISCRIMINATION
27                                     (GOVT. CODE, § 12940(A)) (CACI 2570)
28

1

**CIVIL COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES; DEMAND FOR JURY TRIAL**

6. RETALIATION
(GOVT. CODE, § 12940(H)) (CACI 2505)

7. FAILURE TO PREVENT
DISCRIMINATION, HARASSMENT, OR
RETALIATION
(GOVT. CODE, § 12940(K)) (CACI 2527)

8. VIOLATIONS OF BUSINESS AND
PROFESSIONS CODE SECTION 17200,
ET SEQ.

9. VIOLATIONS OF CALIFORNIA FAMILY
RIGHTS ACT (CACI 2600 & 2620)

COMES NOW, Plaintiff MITCHELL ALAN ANTUNOVICH and complains against defendants AMERICAN BUREAU OF SHIPPING a/k/a "ABS", and DOES 1 through 100, inclusive, as follows:

## I. **THE PARTIES**

1.      Plaintiff MITCHELL A. ANTUNOVICH ("Plaintiff") is, and at all relevant times was, a citizen and legal resident of the State of California.

2.      Defendant AMERICAN BUREAU OF SHIPPING a/k/a "ABS" (hereafter, "ABS") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New York and authorized to transact and transacting the business of a survey, engineering, auditing, and safety and risk consulting business that serves marine, oil, and government sectors. ABS's headquarters are located at 1701 City Plaza Drive, Spring, Texas 77389. ABS maintains a principal place of business in Los Angeles County at 11 Golden Shore, Suite 340, Long Beach, CA 90802 (hereafter, the "Los Angeles Office").

3.      The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will amend this complaint to insert their true names and capacities

2

1    in place of the fictitious names when the same become known to Plaintiff.

2          4.    At all relevant times, Defendants, and each of them, were the agents and employees of

3    each of the remaining Defendants, and were at all times acting within the purpose and scope of said

4    agency and employment, and each Defendant has ratified and approved the acts of each agent.

5

6                              II.  **JURISDICTION AND VENUE**

7          5.    Venue is proper in the Superior Court for the State of California, County of Los

8    Angeles. At all relevant times, Plaintiff was employed at ABS's Los Angeles Office located at 11

9    Golden Shore, Suite 340, Long Beach, CA 90802. Furthermore, the wrongful acts committed by

10   Defendants, and each of them, occurred within Los Angeles County.

11         6.    Plaintiff's damages exceed the jurisdictional minimum of California Superior Court.

12         7.    The Superior Court of the State of California has exclusive subject matter jurisdiction

13   over this action under California Government Code § 12965(b) which states in part: "The superior

14   courts of the State of California shall have jurisdiction of those actions, and the aggrieved person may

15   file in these courts."

16

17              III.  **EXHAUSTION OF PLAINTIFF'S ADMINISTRATIVE REMEDIES**

18         8.    On August 27, 2019, through an attorney, Plaintiff filed a complaint for disability and

19   age discrimination and retaliation with the California Department of Fair Employment and Housing

20   against ABS (the "DFEH Complaint"). On that same day, the DFEH issued a Right-to-Sue Notice to

21   Plaintiff. True copies of Plaintiff's DFEH Complaint and the DFEH Right-to-Sue Notice are attached

22   hereto as Exhibit A and incorporated herein by this reference.

23

24                          IV.  **FACTS COMMON TO ALL CLAIMS**

25         9.    ABS employed Plaintiff as a Surveyor from approximately 2012 until 2019 when ABS

26   wrongfully terminated Plaintiff's employment based on age and disability discrimination. From

27   approximately 2012 to 2013, ABS directed Plaintiff to work as a surveyor in and around Los

28   Angeles, California. From approximately October 2013 to April 2017, ABS directed Plaintiff to work

                                            3

1   as a surveyor in and around Geoji, South Korea. From April 2017 until Plaintiff was wrongfully

2   terminated in 2019, ABS directed Plaintiff to work as a surveyor in and around Los Angeles,

3   California.

4        10.    Plaintiff's primary job duties were to perform surveys and examine and report on

5   marine vessels as well as surveying at vendor sites, monitor and report on their condition and to

6   certify their compliance with certain industry standards. At all times, Plaintiff's work performance

7   was objectively satisfactory, at a minimum.

8        11.    From approximately September 18, 2017 to November 7, 2017, Plaintiff performed

9   his job with an injured knee.  During that period of full-time work, his supervisor assigned him to

10   perform primarily vendor certifications, which did not require him to climb, kneel, jump, or use

11   ladders (collectively, the "Restrictions"). Plaintiff competently performed all of the essential

12   requirements of his job under this vendor-work accommodation, including, on a daily basis,

13   examining and reporting on the certification of clients' materials, such as deep-sea drilling

14   equipment, and clients' fabrication of components to ensure compliance with applicable ABS Rules.

15   Moreover, granting this accommodation caused ABS no undue hardship whatsoever.

16        12.    Plaintiff had knee surgery on November 7, 2017.  From that date through September

17   14, 2018, Plaintiff worked to rehabilitate his healing knee, and was on disability leave from work.

18        13.    On or about September 7, 2018, Plaintiff's physicians told Plaintiff that he could

19   expect to return to work that month, following a medical evaluation to be conducted on September

20   14, 2018.  Plaintiff promptly related this information to ABS.

21        14.    On or about September 10, 2018, ABS human-resources manager Vanessa Kogan

22   visited ABS's Los Angeles headquarters.  During this visit, Ms. Kogan met with, among others,

23   Arthur Donahue, principal surveyor in charge of the Los Angeles office.  In a discussion about

24   staffing, Mr. Donahue mentioned to Ms. Kogan that Mr. Antunovich would be returning in a week or

25   so from his disability leave.  Ms. Kogan responded that, as far as she knew, Mr. Antunovich no

26   longer worked for ABS.

27

28

4

15.     On or about September 13, 2018, Plaintiff had a telephone conversation with Mr. Chris O'Day, West Coast Manager for ABS.  Plaintiff and Mr. O'Day discussed Plaintiff's planned return to work on Monday September 17, 2018.

16.     On Friday, September 14, 2018, Plaintiff notified ABS by telephone that his physicians had cleared him to return to work with the same Restrictions as those which ABS had accommodated in September, October and November 2017.  Shortly thereafter, on the same afternoon, Mr. O'Day telephoned Plaintiff and stated that, were he in Plaintiff's position, he would have found a doctor that would allow him to return to work *without restrictions*.  Mr. O'Day also instructed Plaintiff not to return to work until ABS decided what to do.

17.     In September 2018, ABS human resources representative Dawn Carnline stated to Plaintiff, during a telephone conversation, "We just want you to come back 100%."

18.     On or about September 14, 2018, Plaintiff transmitted to ABS a "Work Status Note" of that date written by his physicians at Newport Orthopedic Institute. The note stated, in relevant part: "Mitchell . . . may return to work beginning September 17, 2018.  Please allow him the following accommodations upon his return: no climbing, kneeling, jumping, or ladders."  These limited, reasonable accommodations were identical to the Restrictions under which Plaintiff worked from September 18 to November 7, 2017.

19.     On information and belief, at all relevant times ABS had available vendor surveying work which should have been assigned to Plaintiff and which would have reasonably accommodated Plaintiff's Restrictions from September 17, 2018 until he was cleared by his orthopedic surgeon to return to work without restrictions.

20.     As of October 2, 2018, Plaintiff had received no further communication from ABS about returning to work.  On that day, Plaintiff emailed an inquiry to Ms. Kogan and Mr. O'Day.

21.     As of October 25, 2018, Plaintiff had still received no communication from ABS in response to his physicians' authorization of his return to work under the Restrictions.

22.     On or about that day, Plaintiff emailed Ms. Kogan, asking for his work status.

23.     On or about October 26, 2018, Ms. Kogan responded by email to Plaintiff, and stated the following, in substantive part: "I will be sending you a document for your doctor to fill out

1  Monday or Tuesday of next week. This is intended to get additional information on your restrictions

2  and on the anticipation date [*sic*] of your full release."

3      24.    From September 17, 2018 until plaintiff was cleared by his orthopedic surgeon to

4  return to work without restrictions, ABS has had much surveyor work available that did not require

5  climbing, kneeling, jumping, or the use of ladders.

6      25.    Moreover, ABS could easily have assigned such work to Plaintiff without suffering

7  any hardship.  Instead, however, ABS continued to deny Plaintiff the reasonable accommodation of

8  such vendor work, despite his physicians' express authorization for his return to work under the

9  Restrictions, and only the Restrictions.

10      26.    Moreover, since September 17, 2018, ABS has taken no action to engage in a good-

11  faith interactive process to determine whether Plaintiff could return to work with a reasonable

12  accommodation.

13      27.    Further, Ms. Kogan's stated intention to burden Plaintiff's physicians with forms to

14  complete was entirely unnecessary, since his physicians had already clearly stated, in a September 14,

15  2018 note, the Restrictions under which Plaintiff could return to work.

16      28.    Moreover, because ABS had, for the foreseeable future, more than enough work that

17  Plaintiff could perform under the Restrictions, it was unnecessary to further question Plaintiffs'

18  physicians about the anticipated date of his return to work *without* such Restrictions.

19      29.    By November 7, 2018, ABS still had taken no action to return Plaintiff to his work as

20  a Surveyor, under the Restrictions, or to engage in an interactive process to determine whether

21  reasonable accommodations could be made so that Plaintiff would be able to perform the essential

22  requirements of his job.

23      30.    In a letter to Plaintiff dated November 7, 2018, Ms. Kogan acknowledged ABS's

24  receipt of Plaintiff's physician's authorization for Plaintiff's return to work under the Restrictions.

25  Nonetheless, ABS refused Plaintiff permission to return to work under the Restrictions.  Instead, Ms.

26  Kogan stated, in pertinent part:

27          You have been absent from work for medical reasons for an extended period of
        time.  We understand that you were on Long Term Disability through 2 July 2018.

28          We now need to manage your absence and plan for your return to work.  This includes

1    understanding whether there are any duties that you can do now and what your
     prognosis is for your full release for your return to work.
2           As the requested accommodations would not allow you to perform the
     essential requirements of your job functions, we need to determine if and when you
3    will be able to return to work with or without reasonable accommodations.

4    31.    This letter also enclosed a lengthy questionnaire for Plaintiff's physicians to complete,

5    to be returned no later than November 19, 2018. This red tape was completely unnecessary in light

6    of Plaintiff's physicians' clearance for his return to work under the Restrictions, effective September

7    17, 2018.

8    32.    As of November 7, 2018, ABS knew that Plaintiff was capable of performing the

9    essential requirements of his job with a reasonable accommodation; that ABS could make that

10   accommodation without suffering any business hardship, and that sufficient job assignments existed

11   to permit Plaintiff to return to work under the Restrictions for the foreseeable future; as evidence of

12   the latter, ABS advertised for vendor surveyors from September 17, 2018 into summer 2019 on job-

13   posting websites.

14   33.    Nonetheless, ABS chose to ignore the authorization of Plaintiff's physicians to return

15   to work under the Restrictions.

16   34.    ABS's November 7, 2018 letter to Plaintiff did not constitute a good-faith attempt to

17   engage in an interactive process with Plaintiff as required under Government Code section 12940(n).

18   35.    Instead, it stated an unfounded conclusion that the requested accommodations would

19   not allow Plaintiff to perform the essential requirements of his job. Yet ABS knew that he did

20   perform all of the essential requirements of his job, and well, with the same accommodations as those

21   ABS afforded Plaintiff in September, October, and November 2017.

22   36.    ABS never engaged in an interactive process with Plaintiff to explore whether he

23   could continue in his job as a Surveyor – or in any other capacity with ABS – with any reasonable

24   accommodation.

25   37.    In a November 12, 2018 report, David Gazzaniga, M.D., Plaintiff's orthopedic

26   surgeon, responded to a questionnaire that enclosed Plaintiff's printed job description, which ABS

27   mailed directly to Dr. Gazzaniga.

28

7

38.     The questionnaire included the following question: "Does Mitchell Antunovich have a medical condition that affects his ability to perform his job duties as described in the attached job description? . . ." Dr. Gazzaniga responded as follows: "Patient cannot kneel, jump, climb vertical ladders as per job description.  Limited on range of motion and ambulation."

39.     The only part of Plaintiff's job description affected by this restriction is the following, under "Working Conditions": "Travel to and from survey sites and manufacturing plants going aboard various marine vessels, offshore platforms or structures. . . . [¶]  Some work may be performed in confined spaces, and it may be necessary to climb vertical ladders of various heights, construction staging of various heights."  Elimination of this portion of Plaintiff's job description would still have permitted him to perform the essential requirements of his job.

40.     In December 2018, ABS's Human Resources Department contacted Plaintiff by telephone and informed him that ABS required a note from Plaintiff's physician, stating that Plaintiff could return to work with *no restrictions* by January or February 2019.   Human Resources further stated that ABS was "holding" his position until January 22, 2019.

41.     On or about January 23, 2019, Plaintiff received a telephone call from Ms. Kogan, who informed Plaintiff that ABS's Long Beach, California office would contact him regarding the return of ABS's vehicle, laptop computer, cellular telephone, gas meter, office key, and parking fob.

42.     That same day, Plaintiff's business email account and cell phone account were deactivated by ABS.

43.     Ms. Kogan also instructed Plaintiff to mail her a physician's note when Plaintiff is released to work with *no restrictions*.  Ms. Kogan further notified Plaintiff that on the day Plaintiff was cleared by his physician to return to work at ABS *without restrictions*, ABS would have to *terminate Plaintiff*.  Ms. Kogan further stated that if Plaintiff then wished to return to work at ABS, he would have to submit an application, just like anyone else applying for a job, and that she could not guarantee him a position at ABS.

44.     On or about January 24, 2019, ABS's Human Resources officer, Vanessa Kogan, informed Plaintiff that ABS must terminate him, and that if Plaintiff wanted to return to working at

1  ABS, he would have to submit a job application like any other applicant. At that time, Ms. Kogan

2  instructed Plaintiff to return his company car and company-issued cellular telephone.

3      45.     On January 24, 2019, Plaintiff sent a letter via U.S. certified mail, addressed to Mr.

4  O'Day and Ms. Kogan at ABS, and stating the following:

5          This letter refers to certain email communications between you and me. I no
   longer have access to my ABS email, and request that you preserve all of my ABS email
6          communications.
           On or about September 14, 2018, I emailed Ms. Kogan the Work Status Note of
7          that date ("Note") that I received from Newport Orthopedic Institute. The Note stated, in
           relevant part: "Mitchell . . . may return to work beginning September 17, 2018. Please
8          allow him the following accommodations upon his return: no climbing, kneeling, jumping, or
           ladders."
9          A copy of the Note is enclosed for your reference.
           Since I emailed the Note to Ms. Kogan, ABS has not engaged with me, in good
10         faith, in an interactive process to determine whether reasonable accommodations would
           permit me to return to work.
11         The restrictions above would, without question, permit me to perform the essential
           functions of my job, with reasonable accommodations. ABS knows this because from
12         September 2, 2017 to November 7, 2017, I worked full time with an injured knee (prior
           to my November 7, 2017 surgery). During that period of full-time work, my supervisor
13         assigned me to perform vendor certifications, which did not require climbing, kneeling,
           jumping, or using ladders. My supervisor was pleased with my work performance during
14         this period. Further, I performed all of the essential functions of my job, and my
           assignment to vendor certifications occupied me on a full-time basis, and did not disrupt
15         the operations of my unit.
           I have been able to return to work full-time, with the identical reasonable
16         accommodations, as of September 14, 2018. However, you have instructed me not to
           return to work, and have not discussed with me my need for reasonable accommodations.
17         As you know, my work restrictions have not changed since September 14, 2017.
           This is to request that ABS allow me to return to full-time work immediately, under the
18         sole restrictions of avoiding climbing, kneeling, jumping, or the use of ladders. Thank
           you in advance for your cooperation. I greatly look forward to returning to work.
19
20      46.     ABS did not respond to Plaintiff's January 24, 2019 letter until March 15, 2019.

21      47.     On that date, ABS stated, in a letter from Ms. Kogan to Plaintiff and in pertinent part:

22  "We received your January 24, 2019 letter requesting an accommodation and requesting to return to

23  work. ABS has evaluated your request and the information provided from your doctor on November

24  7, 2018 demonstrates that there is no reasonable accommodation that would allow you to perform the

25  essential functions of a suitable vacant alternative position, with or without a reasonable

26  accommodation."

27      48.     In this way, ABS summarily concluded that there was no job position within its vast

28  organization that Plaintiff could perform under the Restrictions. Further, ABS continued to ignore

1   the fact that Plaintiff performed the essential requirements of his job under the Restrictions during a

2   period of more than two months in 2017.

3       49.     And, in this way, ABS continued to take no meaningful action to engage, in good

4   faith, in an interactive process with Plaintiff to determine if he could perform *any* position *anywhere*

5   within ABS with a reasonable accommodation.

6       50.     By letter dated April 1, 2019, ABS terminated Plaintiff's employment and ceased all

7   employee benefits, including health insurance.

8       51.     Following his transmission of the Work Status Note on September 14, 2018, ABS

9   refused to allow Plaintiff to return to work, in any job position and under any conditions.  Further,

10  ABS refused even to engage in an interactive process with Plaintiff to determine whether it could

11  provide him with a reasonable accommodation that would permit him to perform the essential

12  requirements of his job, or of any job within ABS.  ABS refused to do so even though it was aware

13  that Plaintiff had performed the essential requirements of his job, under the Restrictions, from

14  September 18 to November 7, 2017.

15      52.     The same reasonable accommodation that ABS made in September, October and

16  November 2017 would have permitted Plaintiff to perform all of the essential requirements of his job,

17  without hardship to ABS.  Despite Plaintiff's continued attempts to meaningfully engage in an

18  interactive process with ABS to determine whether a reasonable accommodation would permit

19  Plaintiff to perform his job as a Surveyor – or any other position, ABS refused to so engage.

20      53.     From September 2018 until April 2019, ABS denied Plaintiff the opportunity to earn a

21  living despite the fact that Plaintiff was fully able to perform the essential requirements of his job

22  with reasonable accommodation on the part of ABS:  observance of the Restrictions.  Finally, on

23  April 1, 2019, ABS terminated Plaintiff because of his disability, never having engaged, in good

24  faith, in an interactive process to determine whether Plaintiff could resume earning a living at ABS

25  with reasonable accommodation.  Moreover, ABS took these employment actions with the

26  knowledge that they violated the California Fair Employment and Housing Act.  Finally, ABS took

27  these employment actions against Plaintiff knowing that it would cause him serious economic

28

1   hardship and would almost certainly cause him anxiety, worry, stress, and mental and emotional

2   suffering.

3         54.    Discrimination against Plaintiff because of his protected status both as a disabled

4   person and as an employee of age 40 or over was a substantial factor in ABS's refusals (1) to engage

5   in an interactive process with Plaintiff, (2) to permit Plaintiff to perform his job as a Surveyor from

6   September 14, 2018 to April 1, 2019 with the same reasonable accommodation as it had provided in

7   September, October, and November, 2017, and (3) to wrongfully terminate Plaintiff's employment in

8   violation of public policy.

9         55.    By these refusals, ABS intentionally discriminated against Plaintiff in compensation

10   and in the terms, conditions, and privileges of employment because of Plaintiff's physical disability,

11   in violation of the Fair Employment and Housing Act, Government Code section 12940, subdivision

12   (a) and, therefore, ABS's termination of Plaintiff was a wrongful discharge in violation of public

13   policy. Moreover, ABS's discharge of Plaintiff was also in retaliation for Plaintiff's requests to

14   engage in an interactive process and for reasonable accommodations to his disability, in violation of

15   the Fair Employment and Housing Act.

16         56.    All of the acts and omissions of ABS, as alleged herein, were ratified by its managing

17   agents. Each act and omission of ABS, as described herein, materially and detrimentally affected the

18   compensation, terms, conditions, and privileges of Plaintiff's employment at ABS. As a direct

19   consequence of such acts and omissions, Plaintiff suffered the loss of salary and benefits of

20   employment. As a further consequence, Plaintiff's future employability and earning capacity have

21   been greatly harmed, resulting in further economic damages. Further, as a direct consequence of

22   ABS's unlawful acts of discrimination and wrongful discharge in violation of public policy, Plaintiff

23   experienced, and continues to experience, profound mental and emotional distress, anxiety, worry

24   and inconvenience. All of Plaintiff's damages will be shown according to proof at the time of trial.

25

26   **FIRST CAUSE OF ACTION**

27   **WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

28   **(By Plaintiff against All Defendants)**

11

57.     Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

58.     Plaintiff was employed by ABS.

59.     At all times, ABS was and is an employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Govt. Code, § 12900 et seq.).

60.     ABS discharged Plaintiff.

61.     Plaintiff's physical disability was a substantial motivating factor in ABS's decision to terminate Plaintiff. This basis for discharging Plaintiff violated Government Code section 12940(a), and therefore violated public policy.

62.     Plaintiff's status as an employee aged 40 years or more was a substantial motivating factor in ABS's decision to terminate Plaintiff. This basis for discharging Plaintiff violated Government Code section 12940(a), and therefore violated public policy.

63.     Plaintiff's opposition to Defendants' refusal to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations was a substantial motivating factor in ABS's decision to terminate Plaintiff. This basis for discharging Plaintiff violated Government Code section 12940(h), and therefore violated public policy.

64.     Plaintiff was harmed.

65.     ABS's discharge of Plaintiff was a substantial factor in causing Plaintiff's harm.

66.     Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

**SECOND CAUSE OF ACTION**

12

**DISABILITY DISCRIMINATION—DISPARATE TREATMENT (GOVT. CODE, § 12940(A))**

**(By Plaintiff against All Defendants)**

67.     Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

68.     Defendants employed Plaintiff.

69.     Defendants knew that Plaintiff had a medical condition that was also a physical condition that limited his ability to perform physical work.

70.     Plaintiff was able to perform the essential duties of his job with reasonable accommodation for his physical condition.

71.     Defendants discharged Plaintiff.

72.     Plaintiff's' medical and physical condition was a substantial motivating reason for Defendants' decision to discharge Plaintiff.

73.     Plaintiff was harmed.

74.     Defendants' discharge of Plaintiff was a substantial factor in causing Plaintiff harm.

75.     Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

**THIRD CAUSE OF ACTION**

**DISABILITY DISCRIMINATION—REASONABLE ACCOMMODATION**

**(GOVT. CODE, § 12940(M))**

**(By Plaintiff against All Defendants)**

13

76.     Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

77.     Plaintiff had, and Defendants treated Plaintiff as if he had, a medical condition that was also a physical disability.

78.     Defendants knew of Plaintiffs medical condition and knew that it was also a physical condition.

79.     Plaintiff was able to perform the essential duties of his job with reasonable accommodation for his physical disability.

80.     Defendants failed to provide reasonable accommodation for Plaintiff's physical disability.

81.     Plaintiff was harmed.

82.     Defendants' failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

83.     Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

### FOURTH CAUSE OF ACTION

### DISABILITY DISCRIMINATION—REASONABLE ACCOMMODATION—

### FAILURE TO ENGAGE IN INTERACTIVE PROCESS

### (GOVT. CODE, § 12940(N))

### (By Plaintiff against All Defendants)

14

84.     Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

85.     Plaintiff had a physical disability that was known to Defendants.

86.     Plaintiff requested that Defendants make reasonable accommodation for his physical disability so that he would be able to perform the essential requirements of his job.

87.     Plaintiff was willing to and desired to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential requirements of his job.

88.     Defendants failed to participate in a timely, good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made.

89.     Plaintiff was harmed.

90.     Defendants' failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

91.     Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## FIFTH CAUSE OF ACTION

### AGE DISCRIMINATION—DISPARATE TREATMENT (GOVT. CODE, § 12940(A))

### (By Plaintiff against All Defendants)

92.     Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

93.     Defendants discharged Plaintiff.

15

94.    Plaintiff was age 40 or older at the time of the discharge.

95.    Plaintiff's age was a substantial motivating reason for Defendants' decision to discharge Plaintiff.

96.    Plaintiff was harmed.

97.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

98.    Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## SIXTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT

### (GOVT. CODE, § 12940(H))

### (By Plaintiff against All Defendants)

99.    Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

100.    Plaintiff opposed Defendants' practice of refusing to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations in response to Plaintiff's request for such accommodations of Plaintiff's physical disability, as required by Government Code section 12940(n).

101.    Defendants discharged Plaintiff.

102.    Plaintiff's engagement in the protected activity of opposing Defendants' violation of Government Code section 12940(n) was a substantial motivating reason for Defendants' decision to discharge Plaintiff.

16

103.   Plaintiff was harmed.

104.   Defendants' decision to discharge Plaintiff was a substantial factor in causing him harm.

105.   Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## SEVENTH CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, OR RETALIATION

### (GOVT. CODE, § 12940(K))

### (By Plaintiff against All Defendants)

106.   Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

107.   Plaintiff was subjected to disability discrimination by ABS in the course of his employment by ABS, in violation of Government Code section 12940, subdivisions (a), (m) and (n).

108.   Plaintiff was subjected to age discrimination by ABS in the course of his employment by ABS, in violation of Government Code section 12940(a).

109.   Plaintiff was subjected to retaliation by ABS in the course of his employment by ABS, in violation of Government Code section 12940(h).

110.   ABS failed to take all reasonable steps to prevent this discrimination and retaliation.

111.   Plaintiff was harmed.

112.   ABS's failure to take all reasonable steps to prevent disability discrimination against Plaintiff was a substantial factor in causing Plaintiff's harm.

17

113.    ABS's failure to take all reasonable steps to prevent age discrimination against Plaintiff was a substantial factor in causing Plaintiff's harm.

114.    ABS's failure to take all reasonable steps to prevent retaliation against Plaintiff was a substantial factor in causing Plaintiff's harm.

115.    Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## **EIGHTH CAUSE OF ACTION**

### **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.**

### **(By Plaintiff against All Defendants)**

116.    Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

117.    Defendants violated Business and Professions Code section 17200, et seq. through the foregoing unlawful and fraudulent conduct, to the direct pecuniary damage of Plaintiff.

118.    Plaintiff has suffered injury in fact and has lost money as a direct result of Defendants' unfair competition.

119.    As a direct and proximate result of Defendants' unlawful, unfair, or fraudulent acts in violation of Government Code section 12940(a), as enumerated in the first seven Causes of Action, Plaintiff has been harmed in an amount to be shown according to proof at the time of trial.  Plaintiff seeks all available remedies under Business and Professions Code section 17200, et seq., including, without limitation, injunctive relief and restitution.

## NINTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA FAMILY RIGHTS ACT

### (By Plaintiff against All Defendants)

120.    Plaintiff refers to all of the foregoing paragraphs and hereby incorporates those paragraphs as though set forth in full in this cause of action.

121.    Plaintiff was eligible for medical leave.

122.    Plaintiff took medical leave for his own serious health condition that made him unable to perform the functions of his job with Defendant ABS.

123.    Plaintiff provided reasonable notice to Defendant ABS of his need for medical leave, including its expected timing and length.

124.    That Defendant ABS refused to return Plaintiff to the same or a comparable job when his medical leave ended.

125.    That Plaintiff was harmed.

126.    That Defendant's decision and/or conduct was a substantial factor in causing Plaintiff's harm.

127.    Defendants' conduct, as described herein, was intended by Defendants to cause injury to Plaintiff or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to defendants with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under California Civil Code section 3294, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as appropriate to each cause of action alleged, as follows:

19

1.    For an award of compensatory damages, including but not limited to loss of wages (front and back pay), career opportunities, pension, benefits and other opportunities of employment;

2.    For an award of special damages in an amount to be proven at trial;

3.    For an award of general damages in the amount to be proven at trial;

4.    Pursuant to Business and Professions Code sections 17203 and 17535, and pursuant to the equitable powers of this Court, that the Defendants be preliminarily and permanently enjoined from all of the unlawful practices enumerated in Causes of Action One through Nine, inclusive;

5.    Pursuant to Business and Professions Code sections 17203 and 17535, and pursuant to the equitable powers of this Court, that the Defendants pay restitution to Plaintiff in an amount to be proven at trial;

6.    For punitive damages pursuant to Civil Code section 3294;

7.    For attorney fees as permitted by law, pursuant to California Government Code §12965 and/or other applicable statutes or contracts;

7.    For costs of suit incurred herein;

8.    For prejudgment interest as permitted by law, including but not limited to Civil Code §3291; and

9.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues and causes of action.

Dated: May 19, 2020

BISNAR | CHASE LLP

By: _____
BRIAN D. CHASE
TOM G. ANTUNOVICH
Attorneys for Plaintiff

20

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

August 27, 2019

Mitchell Antunovich
1244 West Isner Place
Anaheim, California 92801

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 201908-07359328
      Right to Sue: Antunovich / ABS

Dear Mitchell Antunovich,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective August
27, 2019 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1
2
3
4

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

5    Mitchell Antunovich                          DFEH No. 201908-07359328

6                                    Complainant,

7    vs.

8    ABS
     1701 City Plaza Drive
9    Spring, Texas 77389

10                                   Respondents

11   _____

12   1. Respondent **ABS** is an **employer** subject to suit under the California Fair
     Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).
13

14   2. Complainant **Mitchell Antunovich**, resides in the City of **Anaheim** State of
     **California.**
15

16   3. Complainant alleges that on or about **April 1, 2019**, respondent took the following
     adverse actions:

17   **Complainant was discriminated against** because of complainant's disability
18   (physical or mental), age (40 and over) and as a result of the discrimination was
     terminated, asked impermissible non-job-related questions, denied any employment
19   benefit or privilege, denied reasonable accommodation for a disability, denied work
     opportunities or assignments.
20

21   **Complainant experienced retaliation** because complainant reported or resisted
     any form of discrimination or harassment, requested or used a disability-related
22   accommodation and as a result was terminated, asked impermissible non-job-
     related questions, denied any employment benefit or privilege, denied reasonable
23   accommodation for a disability.

24
25
26
27                                          -1-
28   Date Filed: August 27, 2019

**Additional Complaint Details:** I, Mitchell A. Antunovich, hereby state certain facts relevant to my complaint against ABS, my former employer, for disability and age discrimination, including wrongful discharge in violation of public policy.

ABS employed me as a marine surveyor from approximately September 10, 2012 until April 1, 2019, when ABS terminated my employment.  At the time of termination, I was 58 years of age.  My primary job duties were to conduct inspections, surveys, and examinations of marine vessels and stationary marine facilities to assess, monitor and report on their condition and to certify their compliance with certain industry standards. At all times, my work performance was objectively satisfactory, at a minimum.

From approximately September 18, 2017 to November 7, 2017, I performed my job with an injured knee.  During that period of full-time work, my supervisor assigned me to perform primarily vendor certifications, which did not require me to climb, kneel, jump, or use ladders (collectively, the "Restrictions").  I competently performed all of the essential functions of my job under this vendor-work accommodation, including, on a daily basis, examining and reporting on the certification of clients' materials, such as deep-sea drilling equipment, and clients' fabrication of components to ensure compliance with applicable ABS Rules. Moreover, granting this accommodation caused ABS no undue hardship whatsoever.

I had knee surgery on November 7, 2017.  From that date through September 14, 2018, I worked to rehabilitate my healing knee, and was on disability leave from work.  On or about September 7, 2018, my physicians told me that I could expect to return to work that month, following a medical evaluation to be conducted on September 14, 2018.  I promptly related this information to ABS.

On or about September 10 2018, ABS human resources manager Vanessa Kogan visited ABS's Los Angeles headquarters.  During this visit, Ms. Kogan met with, among others, Arthur Donahue, principal surveyor in charge of the Los Angeles office.  In a discussion about staffing, Mr. Donahue mentioned to Ms. Kogan that I would be returning in a week or so from my disability leave.  Ms. Kogan responded that, as far as she knew, Mr. Antunovich no longer worked for ABS.

On or about September 13, 2018, I had a telephone conversation with Mr. Chris O'Day, West Coast Manager for ABS.  Mr. O'Day and I discussed my planned return to work on Monday September 17, 2018.  The conversation ended with Mr. O'Day stating, "Good luck tomorrow with your doctor's appointment."

On Friday, September 14, 2018, I notified ABS by telephone that my physicians had cleared me to return to work with the same Restrictions as those which ABS had accommodated in September, October and November 2017. Shortly thereafter, on the same afternoon, Mr. O'Day telephoned me and stated that, were he in my position, he would have found a doctor that would allow him to return to work without restrictions.  Mr. O'Day also instructed me not to return to work until ABS decided what to do about my need for the reasonable accommodation required by the Restrictions.

*Complaint – DFEH No. 201908-07359328*

Date Filed: August 27, 2019

1    In September 2018, ABS Human Resources representative Dawn Carnline
2  stated to me, during a telephone conversation, "We just want you to come back
   100%."
3    On or about September 14, 2018, I transmitted to ABS a "Work Status Note"
   of that date written by my physicians at Newport Orthopedic Institute. The note
4  stated, in relevant part:  "Mitchell . . . may return to work beginning September 17,
   2018.  Please allow him the following accommodations upon his return: no climbing,
5  kneeling, jumping, or ladders."  These limited, reasonable accommodations were
   identical to the Restrictions under which I worked from September 18 to November
6  7, 2017.
7    As of October 2, 2018, I had received no further communication from ABS
   about returning to work.  On that day, I emailed an inquiry about my work status to
8  Ms. Kogan and Mr. O'Day.
     As of October 25, 2018, I had still received no communication from ABS in
9  response to my physicians' authorization of my return to work under the Restrictions.
   On or about that day, I emailed Ms. Kogan, asking for my work status.  On or about
10 October 26, 2018, Ms. Kogan responded by email to me, and stated the following, in
   substantive part:  "I will be sending you a document for your doctor to fill out Monday
11 or Tuesday of next week. This is intended to get additional information on your
12 restrictions and on the anticipation date [sic] of your full release."
     From September 17, 2018 to the present, ABS has had more than enough
13 marine-surveyor work available that did not require climbing, kneeling, jumping, or
14 the use of ladders.  Moreover, ABS could easily have assigned such work to me
   without suffering any hardship.  Instead, however, ABS continued to deny me the
15 reasonable accommodation of such vendor work, despite my physicians' express
   authorization for my return to work under the Restrictions, and only the Restrictions.
16    Moreover, since September 17, 2018, ABS had taken no action to engage in
17 good faith in an interactive process to determine whether I could return to work with
   a reasonable accommodation.  Further, Ms. Kogan's stated intention to burden my
18 physicians with forms to complete was entirely unnecessary, since my physicians
   had already clearly stated, in a September 14, 2018 note, the Restrictions under
19 which I could return to work.  Moreover, because ABS had, for the foreseeable
20 future, more than enough work that I could perform under the Restrictions, it was
   unnecessary to further question my physicians about the anticipated date of my
21 return to work without such Restrictions.
22    By November 7, 2018, ABS still had taken no action to return me to my work
   as a marine surveyor, under the Restrictions, or to engage, in good faith, in an
   interactive process with me.
23    In a letter to me dated November 7, 2018, Ms. Kogan acknowledged ABS's
24 receipt of my physician's authorization for my return to work under the Restrictions.
   Nonetheless, ABS refused me permission to return to work under the Restrictions.
25 Instead, Ms. Kogan stated, in pertinent part:  "You have been absent from work for
26 medical reasons for an extended period of time.  We understand that you were on

27                              -3-
                        *Complaint – DFEH No. 201908-07359328*
28 Date Filed: August 27, 2019

Long Term Disability through 2 July 2018. We now need to manage your absence and plan for your return to work. This includes understanding whether there are any duties that you can do now and what your prognosis is for your full release for your return to work." [¶] As the requested accommodations would not allow you to perform the essential requirements of your job functions, we need to determine if and when you will be able to return to work with or without reasonable accommodations." This letter also enclosed a lengthy questionnaire for my physicians to complete, to be returned no later than November 19, 2018. This red tape was completely unnecessary in light of my physicians' clearance for my return to work under the Restrictions, effective September 17, 2018.

As of November 7, 2018, ABS knew that I was capable of performing the essential functions of my job with a reasonable accommodation; that ABS could make that accommodation without suffering any business hardship, and that sufficient job assignments existed to permit me to return to work under the Restrictions for the foreseeable future; as evidence of the latter, ABS advertised for vendor surveyors from September 17, 2018 into summer 2019 on job-posting websites. Nonetheless, ABS chose to ignore the authorization of my physicians to return to work under the Restrictions, and chose instead to force me and my physicians to complete more forms.

ABS's November 7, 2018 letter to me did not constitute a good-faith attempt to engage in an interactive process with me as required under Government Code section 12940(n). Instead, it stated an unfounded conclusion that the requested accommodations would not allow me to perform the essential functions of my job. Yet ABS knew that I did perform all essential functions of my job, and well, with the same accommodations in September, October, and part of November 2017.

ABS never subsequently engaged with me to explore whether I could continue in my job as a marine surveyor – or in any other capacity with ABS – with a reasonable accommodation.

In a November 12, 2018 report, David Gazzaniga, M.D., my orthopedic surgeon, responded to a questionnaire that enclosed my printed job description, which ABS mailed directly to him. The questionnaire included the following question: "Does Mitchell Antunovich have a medical condition that affects his ability to perform his job duties as described in the attached job description? . . ." Dr. Gazzaniga responded as follows: "Patient cannot kneel, jump, climb vertical ladders as per job description. Limited on range of motion and ambulation."

The only part of my job description affected by this restriction is the following, under "Working Conditions": "Travel to and from survey sites and manufacturing plants going aboard various marine vessels, offshore platforms or structures. . . . [¶] Some work may be performed in confined spaces, and it may be necessary to climb vertical ladders of various heights, construction staging of various heights." Elimination of this portion of my job description would still have permitted me to perform the essential functions of my job.

-4-
*Complaint – DFEH No. 201908-07359328*

Date Filed: August 27, 2019

1
2
3

In December 2018, ABS's Human Resources Department contacted me by telephone and informed me that ABS required a note from my physician, stating that I could return to work with no restrictions by January or February 2019.   Human Resources further stated that ABS was "holding" my position until January 22, 2019.

4
5
6
7
8
9

On or about January 23, 2019, I received a telephone call from Ms. Kogan, who informed me that ABS's Long Beach, California office would contact me regarding the return of ABS's vehicle, laptop computer, cellular telephone, gas meter, office key, and parking fob.  That same day, my business email account and cell phone account were shut down by ABS.  Ms. Kogan also instructed me to mail her a physician's note when I am released to work with no restrictions.  Ms. Kogan further notified me that on the day I was cleared by my physician to return to work at ABS without restrictions, ABS would have to terminate me.  Ms. Kogan further stated that if I then wished to return to work at ABS, I would have to submit an application, just like anyone else applying for a job, and that she could not guarantee me a position at ABS.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

On January 24, 2019, I sent a letter via U.S. certified mail and addressed to Mr. O'Day and Ms. Kogan at ABS, and stating the following:  "This letter refers to certain email communications between you and me. I no longer have access to my ABS email, and request that you preserve all of my ABS email communications.  [¶]  On or about September 14, 2018, I emailed Ms. Kogan the Work Status Note of that date ("Note") that I received from Newport Orthopedic Institute. The Note stated, in relevant part: "Mitchell . . . may return to work beginning September 17, 2018. Please allow him the following accommodations upon his return: no climbing, kneeling, jumping, or ladders."  [¶]  A copy of the Note is enclosed for your reference.  [¶]  Since I emailed the Note to Ms. Kogan, ABS has not engaged with me, in good faith, in an interactive process to determine whether reasonable accommodations would permit me to return to work.  [¶]  The restrictions above would, without question, permit me to perform the essential functions of my job, with reasonable accommodations. ABS knows this because from September 2, 2017 to November 7, 2017, I worked full time with an injured knee (prior to my November 7, 2017 surgery).  During that period of full-time work, my supervisor assigned me to perform vendor certifications, which did not require climbing, kneeling, jumping, or using ladders. My supervisor was pleased with my work performance during this period. Further, I performed all of the essential functions of my job, and my assignment to vendor certifications occupied me on a full-time basis, and did not disrupt the operations of my unit.  [¶]  I have been able to return to work full-time, with the identical reasonable accommodations, as of September 14, 2018. However, you have instructed me not to return to work, and have not discussed with me my need for reasonable accommodations. As you know, my work restrictions have not changed since September 14, 2017. This is to request that ABS allow me to return to full-time work immediately, under the sole restrictions of avoiding climbing, kneeling, jumping, or the use of ladders. Thank you in advance for your cooperation. I greatly look forward to returning to work."

26
27
28

Date Filed: August 27, 2019

ABS did not respond to my January 24, 2019 letter until March 15, 2019.  On that date, ABS stated, in a letter from Ms. Kogan to me and in pertinent part: "We received your January 24, 2019 letter requesting an accommodation and requesting to return to work. ABS has evaluated your request and the information provided from your doctor on November 7, 2018 demonstrates that there is no reasonable accommodation that would allow you to perform the essential functions of a suitable vacant alternative position, with or without a reasonable accommodation."  In this way, ABS summarily concluded that there was no job position within its vast organization that I could perform under the Restrictions.  Further, ABS continued to ignore the fact that I performed the essential functions of my job under the Restrictions during a period of more than two months in 2017.  And, in this way, ABS continued to take no meaningful action to engage, in good faith, in an interactive process with me to determine if I could perform any position anywhere within ABS with a reasonable accommodation.

On or about January 24, 2019, ABS's human resources manager, Vanessa Kogan, informed me that ABS must terminate me, and that if I wanted to return to working at ABS, I would have to submit a job application like any other applicant.  At that time, Ms. Kogan instructed me to return my company car and company-issued cellular telephone.

By letter dated April 1, 2019, ABS terminated my employment and ceased all employee benefits, including health insurance.

Following my transmission of the Work Status Note on September 14, 2018, ABS refused to allow me to return to work, in any job position and under any conditions.  Further, ABS refused even to engage in an interactive process with me to determine whether it could provide me with a reasonable accommodation that would permit me to perform the essential functions of my job, or of any job within ABS.  ABS refused to do so even though it was aware that I had performed the essential functions of my job, under the Restrictions, from September 18 to November 7, 2017.

The same reasonable accommodation that ABS made in September, October and November 2017 would have permitted me to perform all of the essential functions of my job, without hardship to ABS.  Despite my continued attempts to meaningfully engage in an interactive process with ABS to determine whether a reasonable accommodation would permit me to perform my job as a marine surveyor – or any other position, ABS refused to so engage.

Discrimination against me because of my protected status as a disabled person was a substantial factor in ABS's refusals (1) to engage in an interactive process with me, (2) to permit me to perform my job as a marine surveyor from September 14, 2018 to April 1, 2019 with the same reasonable accommodation as it had provided in September, October, and November, 2017, and (3) to terminate my employment.  Moreover, discrimination against me because of my age of at least 40 years was also a substantial factor in ABS's termination of me.  By these refusals, ABS intentionally discriminated against me in compensation and in the terms,

conditions, and privileges of employment because of my physical disability, in violation of the Fair Employment and Housing Act, Government Code section 12940, subdivision (a) and, therefore, ABS's termination of me was a wrongful discharge in violation of public policy.  Moreover, ABS's discharge of me was also in retaliation for my requests to engage in an interactive process and for reasonable accommodations to my disability, in violation of the Fair Employment and Housing Act, Government Code section 12940, subdivision (h).  Finally, ABS failed to engage with me in an interactive process, in violation of Government Code section 12940, subdivision (n).

All of the acts and omissions of ABS, as alleged herein, were ratified by its managing agents.  Each act and omission of ABS, as described herein, materially and detrimentally affected the compensation, terms, conditions, and privileges of my employment at ABS.  As a direct consequence of such acts and omissions, I suffered the loss of salary and benefits of employment.  As a further consequence, my future employability and earning capacity have been greatly harmed, resulting in further economic damages.  Further, as a direct consequence of ABS's unlawful acts of discrimination and wrongful discharge in violation of public policy, I experienced, and continue to experience, profound mental and emotional distress.

Date Filed: August 27, 2019

1  VERIFICATION

2  I, **James R. Kristy, Esq.**, am the **Attorney** in the above-entitled complaint.  I have
3  read the foregoing complaint and know the contents thereof.  The matters alleged are
   based on information and belief, which I believe to be true.

4  On August 27, 2019, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                              **Long Beach, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          -8-
                              *Complaint – DFEH No. 201908-07359328*

28  Date Filed: August 27, 2019

Electronically FILED by Superior Court of California, County of Los Angeles on 05/19/2020 03:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* 20STCV19054 | FOR COURT USE ONLY |
|---|---|
| Brian D. Chase (CA SBN 164109) <br> Tom G. Antunovich (CA SBN 305216) <br> BISNAR \| CHASE LLP, 1301 Dove St. Suite 120, Newport Beach, CA 92660 <br><br> TELEPHONE NO.: 949-752-2999    FAX NO. *(Optional):* 949-752-2777 <br> ATTORNEY FOR *(Name):* Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| STREET ADDRESS: 111 N. Hill Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Los Angeles, CA 90012 |
| BRANCH NAME: STANLEY MOSK |

| CASE NAME: |
|---|
| Mitchell Alan Antunovich v. American Bureau of Shipping a/k/a ABS |

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: 20STCV19054 |
|---|---|---|---|
| [x] Unlimited <br> (Amount <br> demanded <br> exceeds $25,000) | [ ] Limited <br> (Amount <br> demanded is <br> $25,000) | [ ] Counter   [ ] Joinder <br><br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [x] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* Nine
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 19, 2020

Tom G. Antunovich
_____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

| SHORT TITLE: Mitchell Alan Antunovich v. American Bureau of Shipping a/k/a ABS | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Mitchell Alan Antunovich v. American Bureau of Shipping a/k/a ABS | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☑ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

SHORT TITLE: Mitchell Alan Antunovich v. American Bureau of Shipping a/k/a ABS

CASE NUMBER

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages<br>☐ A6123  Workplace Harassment With Damages<br>☐ A6124  Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

| SHORT TITLE: Mitchell Alan Antunovich v. American Bureau of Shipping a/k/a ABS | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>1.  2.  3. ✓4.  5.  6.  7.  8.  9.  10.  11. | ADDRESS:<br>11 Golden Shore, Suite 340 |
|---|---|

| CITY:<br>Long Beach | STATE:<br>CA | ZIP CODE:<br>90802 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: May 15, 2020

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>**05/19/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Clifton _____ Deputy |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20STCV19054 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Stuart M. Rice | 49 | | | | | | |

<br><br><br><br><br><br><br><br>

Given to the Plaintiff/Cross-Complainant/Attorney of Record     Sherri R. Carter, Executive Officer / Clerk of Court

on 05/20/2020 _____<br>    (Date)                       By R. Clifton _____, Deputy Clerk

LACIV 190 (Rev 6/18)     **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**<br>LASC Approved 05/06

### INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

#### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

#### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

#### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

#### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

#### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

#### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

#### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

#### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

#### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

#### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

#### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
        Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )   FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all

documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los

Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex

Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).)

All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the

following:

1) DEFINITIONS

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to

      quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling

      portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission

      of documents to the Court for processing which may contain one or more PDF documents

      attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a

      document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"** An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court. (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"** For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"** An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"** A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format. Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs. Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i)    Depositions;

   ii)   Declarations;

   iii)  Exhibits (including exhibits to declarations);

   iv)   Transcripts (including excerpts within transcripts);

   v)    Points and Authorities;

   vi)   Citations; and

   vii)  Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

   Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

   Multiple documents relating to one case can be uploaded in one envelope transaction.

4

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

   i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

   ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i)    Any printed document required pursuant to a Standing or General Order;

    ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii)  Pleadings and motions that include points and authorities;

    iv)   Demurrers;

    v)    Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi)   Motions for Summary Judgment/Adjudication; and

    vii)  Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

6

2019-GEN-014-00

1   11) SIGNATURES ON ELECTRONIC FILING

2       For purposes of this General Order, all electronic filings must be in compliance with California

3   Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4   Division of the Los Angeles County Superior Court.

5

6       This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10  DATED: May 3, 2019       

11                                KEVIN C. BRAZILE

12                                Presiding Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◇Los Angeles County Bar Association Litigation Section◇

◇ Los Angeles County Bar Association
Labor and Employment Law Section◇

◇Consumer Attorneys Association of Los Angeles◇

◇Southern California Defense Counsel◇

◇Association of Business Trial Lawyers◇

◇California Employment Lawyers Association◇

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |
| TELEPHONE NO.:      FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| | CASE NUMBER: |
|---|---|
| STIPULATION – DISCOVERY RESOLUTION | |

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE | CASE NUMBER |
| --- | --- |
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use
    STIPULATION – DISCOVERY RESOLUTION
    Page 2 of 3

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
          (INSERT DATE)                         (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____      > _____
(TYPE OR PRINT NAME)                      (ATTORNEY FOR PLAINTIFF)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR DEFENDANT)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)
Date:

_____      > _____
(TYPE OR PRINT NAME)                     (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.*  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT.

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request)

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases)

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

   These organizations cannot accept every case and they may decline cases at their discretion.
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
     - Free, day- of- trial mediations at the courthouse. No appointment needed.
     - Free or low-cost mediations before the day of trial.
     - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit.
       http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit **http://www.lacourt.org/division/civil/CI0047.aspx**

**Los Angeles Superior Court ADR website:  http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

2